**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 95-11062

Summary Calendar.

Marilie HILEMAN, Plaintiff-Appellee,

v.

CITY of DALLAS, TEXAS, Defendant-Appellant.

June 24, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before SMITH, DUHÉ and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The City of Dallas ("Dallas") appeals a denial of a judgment as a matter of law ("j.m.l.") in its defense of a Rehabilitation Act claim, 29 U.S.C. § 794(a) (West.Supp.1997), brought by Marilie Hileman.  We reverse and render j.m.l. for Dallas.

I.

Hileman worked as an electrical inspector for Dallas from August 1984 until her resignation in March 1992.  Although she was required to work between the hours of 8:00 a.m. and 4:30 p.m., she allegedly was unable to do so because of her chronic diarrhea, caused in part by a spastic colon and apparently aggravated by multiple sclerosis.  Hileman's condition required that she develop a set time every morning (between 7:30 a.m. and 8:00 a.m.)  to eliminate her bowels.  Over time, Hileman's "natural occurring time

1

for bowel elimination" gradually became closer to 8:00 a.m., forcing her to arrive approximately 20 to 30 minutes late to work on many mornings.[1] Attempts to change the time of her bowel elimination proved fruitless, and, notwithstanding the fact that Hileman lived less than one mile from work, her tardiness continued.

Hileman was warned first in April 1989 about her repeated tardiness and poor attendance; she had been late or absent on twelve different occasions during the first three months of the year. She was warned again in January 1992 for being tardy seven times in a twenty-one-day period and officially reprimanded in February 1992 for reporting to work late each of the sixteen days since her last warning.

Hileman sought an accommodation from the Reasonable Accommodations Committee at the City of Dallas to permit her to arrive at work thirty minutes late. Although the committee granted her request, Sam Harting, Hileman's general supervisor, called her into his office on March 11, 1992, to inform her that he disagreed with the decision and would inquire into the department's appeal rights. During this meeting, Hileman resigned from employment with Dallas because she "couldn't take [it] anymore."

Hileman filed the instant action seeking relief under the

---

[1]Her late arrival was not merely an inconvenience, but rather compromised her ability to perform her job. Electrical inspectors were required to receive phone calls between 8:00 a.m. and 8:30 a.m. from contractors regarding previous days' inspections or to schedule an inspection. From 8:30 a.m. until 4:00 p.m. the inspectors remained in the field conducting residential and commercial property inspections.

Rehabilitation Act and alleging that she had been discriminated against in the terms and conditions of her employment because she is handicapped by multiple sclerosis.[2] Following a jury trial, she was awarded $30,000 for loss of economic benefits of past employment and $1,800 for mental anguish and loss of enjoyment. The court also awarded attorneys' fees in the amount of $21,230.17.

## II.

We review *de novo* the denial of a j.m.l., viewing all evidence in the light most favorable to the non-movant. *See Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994). We will grant the motion only where the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary result. *See id.*

To qualify for relief under the Rehabilitation Act, a plaintiff must prove that (1) he is an "individual with a disability"; (2) who is "otherwise qualified"; (3) who worked for a "program or activity receiving Federal financial assistance"; and (4) that he was discriminated against "solely by reason of her or his disability." 29 U.S.C. § 794(a); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993). An individual with a disability is any person who (1) has a physical or mental impairment which "substantially limits one or more of such person's major life activities"; (2) has a "record" of such an impairment; or (3) is "regarded" as having such an impairment. 29 U.S.C. §

[2]Hileman's original complaint alleged a litany of other claims, including claims under § 1983 and state common law, but she abandoned each either before or during trial.

706(8)(B) (West Supp.1997).

A "record" of impairment means that the claimant has a history of, or has been misclassified as having, a mental or physical impairment that "substantially limits one or more major life activities." 45 C.F.R. § 84.3(j)(2)(iii) (1992).[3] An individual is "regarded" as having an impairment if he (1) has a physical or mental impairment that does not substantially limit a major life activity, but that is treated by a recipient as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) does not have a qualifying physical or mental impairment (enumerated in 45 C.F.R. § 84.3(j)(2)(i) (1992)) but is treated as having such an impairment. 45 C.F.R. § 84.3(j)(2)(iv) (1992).

A physical or mental impairment that affects the claimant's ability to engage in a narrow range of jobs only or a particular job alone does not "substantially limit" one or more major life activities. *See Chandler,* 2 F.3d at 1392 (citing *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 n. 3 (6th Cir.1985)); *accord Byrne v. Board of Educ.,* 979 F.2d 560, 565 (7th Cir.1992); *Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328, 1343 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir.1988). The inability to work at the specific job of one's choosing is not a substantial

---

[3]The Supreme Court has instructed that the regulations promulgated by the Department of Health and Human Services are an important source of guidance on the meaning of § 706. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1126-27, 94 L.Ed.2d 307 (1987).

4

limitation on a major life activity. *See Byrne,* 979 F.2d at 565 (citing *Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989)). "The impairment must substantially limit employment generally." *Byrne,* 979 F.2d at 565. Whether an impairment substantially limits a plaintiff's employment potential depends upon the number and types of jobs from which he is disqualified, the geographic area to which he has reasonable access, and his employment qualifications. *See Chandler,* 2 F.3d at 1392 (citing *Jasany,* 755 F.2d at 1249).

Hileman claims that she suffers from a disability—a spastic colon aggravated by multiple sclerosis resulting in a loss of bowel control—that substantially limits her major life activity of working. She also contends that her disability substantially limits her ability to read print over one page in length without blurred vision and to hear effectively.

Notwithstanding these contentions, we do not find sufficient evidence in the record to sustain Hileman's argument that she is an "individual with a disability." In particular, there is insufficient evidence demonstrating that her physical impairments substantially limit one or more major life activities. Hileman testified on cross-examination that, despite her impairments, she was able to care for herself (with the exception of short, temporary periods in 1990 and 1991), perform manual tasks, walk, see, hear, speak, breathe, and work, all enumerated "major life activities" under 45 C.F.R. § 84.3(j)(2)(ii). Dr. Robert Jacobson, a colo-rectal surgeon who examined Hileman during the course of her impairments, also testified that her impairments did not limit her

ability to engage in these major life activities and that he never placed any restrictions or limitations on her activities.

The testimony of Dr. Allen Martin, Hileman's neurologist, is in accord. He testified further that, in response to a request from Dallas inquiring whether Hileman's work activities should be limited owing to her impairments, he certified that she did not have "a condition that would interfere at this time with driving a car safely or performing her job duties as outlined in your Classifications Specifications and Employee Job Duties and Standards."

Not only does the record evidence dispel Hileman's contention that her impairments substantially limited her ability to perform her *particular* electrical inspector job with Dallas, but the record is devoid of any evidence demonstrating that her impairments substantially limit her ability to obtain work *generally.* An impairment must substantially limit employment in general, not merely the particular job that the plaintiff may wish to hold. *See Byrne,* 979 F.2d at 565; *accord Chandler,* 2 F.3d at 1392-93.

Following her employment with Dallas, Hileman taught electrician classes and testified further that "I continue to teach every chance I get." When asked why she had not sought employment as an electrical inspector similar to her Dallas job, Hileman responded, "I anticipated similar problems that I had with the City of Dallas. Nothing in the world could make me go through that again. I would rather starve to death."

That Hileman "would rather starve to death"—or, as evinced by

6

her actions in the instant case, drink from the well of a $31,800 jury award—than seek employment in a similar capacity to that which she had with Dallas is insufficient to demonstrate that her impairment substantially limits her ability to obtain employment generally. We refuse to construe the Rehabilitation Act as a handout to those who are in fact capable of working in substantially similar jobs (or, as did Hileman, who choose not to determine whether they are able to obtain alternate employment), but who choose not to pursue such employment because they "anticipate[ ] similar problems."

Such inaction alone is not adequate proof of a substantial limitation on employment opportunities generally. It is Hileman's burden to prove that there are no other satisfactory employment opportunities available to her that could accommodate her bowel movement schedule (i.e., jobs that begin at 8:30 a.m. instead of 8:00 a.m.), and she has failed to carry this burden.[4]

---

[4]To the extent that Hileman contends that her vision problems also substantially limit her major life activity of working, we reject her argument for two reasons. First, there is no record evidence indicating that this impairment affects her employment opportunities as an electrical inspector or otherwise. Second, because the extent of her blurred vision is not developed in the record (save her own testimony to that effect), we are unable to determine whether her condition is in fact a disability. *See Chandler,* 2 F.3d at 1390 (noting that a person is not handicapped if his vision can be corrected to 20/200).

To the extent that Hileman suggests that her vision problems substantially limit her major life activity of reading, we similarly reject this argument. First, she has directed us to no authority suggesting that reading is in fact a "major life activity." See 45 C.F.R. §84.3 (j)(2)(ii) (including "seeing," but not "reading," among the list of enumerated major life activities). Second, she states only that her blurred vision prevents her from reading more than

Because Hileman's impairments do not limit substantially one or more major life activities, she is not an "individual with a disability" under subsection (i) or (ii) of 29 U.S.C. § 706(8)(B), as incorporated by reference into 29 U.S.C. § 794(a). Her brief on appeal is devoid of any argument regarding whether she may be considered an "individual with a disability" because she is "regarded" as having such an impairment under subsection (iii) of § 706(8)(B); the argument is therefore deemed waived. *See* FED. R.APP. P. 28(a)(6); *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 260 n. 9 (5th Cir.1995) (holding that "failure to provide any legal or factual analysis of an issue results in waiver"). Even assuming *arguendo* that Hileman has preserved this argument, we do not find sufficient record evidence demonstrating that she was "regarded" as having an impairment.

REVERSED and RENDERED.

---

one page at a time without taking a break. This description of her problem alone provides little upon which to evaluate whether the impairment in fact *substantially limits* her ability to read.