IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50385

_____

ALBERTA DESHAY, Individually and as next
friend of her son Kevin O. Deshay; HENRY DESHAY,
Individually and as next friend of his son Kevin O. Deshay,

Plaintiffs-Appellants,

versus

BASTROP INDEPENDENT SCHOOL DISTRICT;
BASTROP SPECIAL EDUCATION COOPERATIVE;
PAUL H. FLEMING; VERLA LONG; MARGARET
RYAN; HELEN SMITH; UNKNOWN EMPLOYEES, of
the Bastrop Independent School District and Bastrop
Special Education Cooperative, in their individual and
official capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(A-95-CV-535)

_____

April 16, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Alberta and Henry DeShay seek review of an adverse summary judgment dismissing their

claims against Bastrop Independent School District and other defendants (individually and

collectively, BISD), the 12(b)(6) dismissal of claims against several state employees in their

individual capacities, and various interlocutory rulings of the district court. We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

This court reviews the grant of a motion for summary judgment *de novo*, reading the facts and all reasonable factual inferences in the light most favorable to the nonmovant. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). To resist summary judgment, the nonmovant must raise a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

 *A.* *1983 claims.*

There is no respondeat superior liability of a municipality for its employee's negligent or grossly negligent conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). However, the DeShays may proceed against BISD on two section 1983 theories. First, they may attempt to demonstrate the existence of an official custom or policy, which is satisfied if the conduct of BISD employees is so persistent and widespread that it rises to the level of custom and a BISD policymaker actually or constructively knew about the custom. *See Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). Alternatively, the DeShays can show that the BISD, as a result of its "deliberate indifference" to Kevin DeShay's constitutional rights, failed to adequately train its employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). BISD acted with deliberate indifference if it overlooked inadequacies in a training program of which it was actually or constructively aware. *See, e.g.*, *Board of County Comm'rs v. Brown*, 117 S. Ct. 1382, 1390 (1997). Any such known custom or deliberate indifference must have actually caused Kevin's injuries. *See Harris*, 489 U.S. at 389.

The DeShays cannot satisfy either theory. The DeShays argue that school employees readily ignored a number of school policies after Kevin was injured. There is no showing that this disobedience was so widespread and persistent as to rise to the level of custom. Further, none of the BISD policies to which the DeShays cite, even if they were customarily ignored by school staff, actually caused Kevin's injuries. As such, the district court correctly determined that, when read in the light most favorable to the DeShays, the summary judgment evidence shows at most "an isolated incident of negligent caretaking," which is not actionable under section 1983.

2

Our decision in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), is not to the contrary. In *Grandstaff* we held that episodes of dangerous recklessness—including a repeated and wanton barrage of police gunfire in the direction of an innocent bystander, which took his life—satisfied the necessary condition that policymaking authorities were constructively aware of a prevalent custom among the officers to disregard human life and safety, because the policymaker followed these remarkable episodes with "no reprimands, no discharges, and no admissions of error." *Id.* at 171. We stated that the policymaker's failure to react "to so gross an abuse of the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force. . . . [T]he subsequent acceptance by the policymaker tends to prove his preexisting disposition and policy." *Id.* The inference justified in *Grandstaff* does not surface under the summary judgment facts presented in this case. The BISD staff's procedural mistakes after discovering Kevin's discomfort and when investigating the episode, cited by the DeShay's as a prevalent custom of violating BISD policy, does not support an inference that the staff acted with dangerous recklessness because they feared no authoritative retribution or recognized that the policymaking authority in fact condoned such recklessness. The BISD staff operated under no implied guarantee that they would not be held accountable if they should grossly fail at their duties. Further, the practice of rolling a student upon a therapeutic medicine ball, although perhaps negligent when that student is severely osteoporotic, does not constitute the sort of grave and dangerous recklessness epitomized by the actions of the Borger City police force in *Grandstaff*. As such, we disagree that BISD's subsequent investigatory missteps prove a preexisting policy, or as the DeShays allege, a "dangerous environment," which in turn caused an injury to DeShay's protected constitutional rights.

The DeShays also allege that the school was on notice that its special education employees were inadequately trained and that it failed to respond to the inadequacy, in this way demonstrating deliberate indifference to Kevin's constitutional rights. Only one piece of the

summary judgment evidence could support the DeShays' assertion. In 1991, an OCR investigation found that BISD had failed to properly identify a student with asthma as someone requiring accommodation. The DeShays conclude from this that BISD should have known that its special education staff was inadequately trained and was required under section 1983 to address the inadequacy. Even read in the light most favorable to the DeShay's, this single example of a failed diagnosis does not indicate that the special education staff as a whole is insufficiently trained such that the BISD could be found to have been deliberately indifferent to Kevin's rights.

The DeShay's assertion that the school's insufficient investigation violated the due process clause, actionable under section 1983, must also fail. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing *unintended* loss or injury to life, liberty or property." *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (second emphasis added). Each procedural oversight cited in the DeShays' brief possibly constituted a negligent investigatory shortfall, but none rises to the level of an intentional injury.

### B.    Rehabilitation Act claim.

The Rehabilitation Act of 1974 ensures that the medically disabled receive equal treatment from federally funded programs and activities. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1389-90 (5th Cir. 1993). The only issue for dispute in this case is whether Kevin was treated adversely *intentionally* and *solely* because of his disability. *See Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997) (requiring adverse treatment resulting solely from the complainant's disabled status); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1357 (5th Cir. 1983) (requiring intentional discrimination).

The DeShays argue that BISD's failure to adopt a procedure for communicating with students like Kevin who cannot speak demonstrates intentional adverse treatment, but for which Nurse Ryan would have properly treated Kevin's injury. Ryan acknowledged in her deposition that she would have sought emergency medical attention had Kevin been able to communicate the

extent of his injuries to her. There is no evidence, however, that the school forbore from promulgating a policy for communicating with noncommunicative students solely because of an intent to discriminate against such students. The mere lack of this policy, standing alone, does not suffice. The DeShays further allege that, because BISD knew that Kevin could not verbally communicate, it should have had in place a special procedure for providing emergency care to Kevin if his parents could not be reached. BISD's failure to address in advance the possibility that Kevin's parents might not be available at a time when Kevin displays inconclusive signs of discomfort does not support the inference that BISD intentionally discriminated against Kevin solely because of his impairment. The district court did not err when it dismissed the DeShays' Rehabilitation Act claim at summary judgment.

C.      *Family Educational Rights and Privacy Act claim.*

A section 1983 action may be premised upon a widespread municipal policy or custom of violating rights secured by FERPA. *See Monell*, 436 U.S. at 690-91; *Tarka v. Cunningham*, 917 F.2d 890, 891 (5th Cir. 1990). The DeShays allege that BISD's custom of ignoring its own policies supports the FERPA claim. The summary judgment evidence provides no indication that BISD restricted the DeShays' access to records covered by FERPA according to a prevalent and widespread policy or custom. The district court properly granted summary judgment favoring BISD on this claim.

D.      *Texas Open Meetings Act claim.*

TOMA specifically authorizes BISD to meet in closed session for various purposes, including personnel matters and conferences, deliberations over complaints brought against employees, pending or contemplated litigation, and settlement offers. *See* TEX. GOV'T CODE ANN. §§ 551.071-.084 (Vernon 1994). The meetings in this case were called to address the DeShays' complaints against the BISD special education and investigatory staff. The DeShays never requested an open meeting. Alberta DeShay's August 9 letter merely requested that an appeal of the Superintendent's determination be placed on the Board of Trustees's agenda. There is no

5

record that the DeShays timely objected to the Board's decision to hear the matter in executive session. *Cf. United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118, 127 (Tex. App.—San Antonio 1995), *writ denied per curiam*, 940 S.W.2d 593 (Tex. 1996). Further, the argument that their request for an appeal should constitute a request for an *open* hearing was not raised in the district court and put forward before this court for the first time only in the Appellants' reply brief. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.2 (5th Cir. 1996) (stating that this court usually will not review a matter that was not first presented to the district court and that issues not raised and argued in the initial brief on appeal are waived). BISD was entitled to close the meetings, and the district court correctly dismissed the TOMA claim.

E.      *Additional claims.*

The district court did not abuse its discretion when it refused to order a medical examination of Smith, who is not a party, under Federal Rule of Procedure 35. The DeShays have not demonstrated any good cause for submitting Smith to a psychological examination. Similarly, the district court did not abuse its discretion when it refused to order BISD to turn over copies of certified agendas under TOMA. These agendas fall under the exception for hearing claims brought against BISD officers or employees. *See* TEX. GOV'T CODE ANN. § 551.074(2) (Vernon 1994). Finally, the district court did not err when it dismissed the claims against several of the defendants in their individual capacities. We review this 12(b)(6) dismissal *de novo*, applying the same standard as the district court. *See Eason v. Holt*, 73 F.3d 600, 601 (5th Cir. 1996). Qualified immunity protects public officials from civil liability unless the defendants violated constitutional rights that are clearly-established and their conduct was objectively unreasonable. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). Review of the DeShays' pleadings do not reveal that the actions of the individual defendants in caring for DeShay and failing to seek emergency treatment constitute an objectively unreasonable deprivation of Kevin's right to be free from injury while in BISD's care. Thus, the dismissal of the individual defendants under the doctrine of qualified immunity was proper.

6

AFFIRMED.