**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 10, 2013

No. 12-41121

Lyle W. Cayce
Clerk

CAROLYN S. SAPP,

Plaintiff - Appellant

v.

PATRICK R. DONOHOE, Post Master General,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CV-650

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Carolyn Sapp, proceeding pro se, appeals the district court's entry of summary judgment against her on her workplace discrimination and retaliation claims. We AFFIRM.

**FACTS AND PROCEEDINGS**

Sapp began working for the United States Postal Service ("USPS") in 1980. At all times relevant, Sapp was employed as a supervisor in the Distributions

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41121

Operations department at the USPS's Beaumont, Texas Remote Encoding Center ("Beaumont REC").

### A. EEO #1

Sapp began having workplace conflicts with her subordinates in 1998. After a series of incidents in the spring and summer of 2001, which resulted in several employees filing grievances against Sapp, Sapp's supervisor, Don Hale, offered Sapp a number of ways to resolve the growing interpersonal difficulties she faced at work. First, on August 16, he offered Sapp a new assignment at the post office in Nederland, Texas, which she declined. Second, a day later, he recommended that she seek counseling on improving her communication skills through the Employee Assistance Program, which Sapp did. Third, on September 10, he changed Sapp's schedule from an afternoon shift to a night shift to separate Sapp from the employees with whom she had fought. Less than a week after this scheduling shift, Sapp stopped coming to work.

On December 18, Sapp submitted a workers' compensation claim to the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). In it, she claimed that she had developed major depression, anxiety, panic disorder, and sleeping problems as a result of a hostile work environment. After some miscommunications between the USPS and OWCP temporarily held up the processing of her claim, OWCP denied Sapp's claim on June 21, 2002, for failure to show causation and upheld its denial on three subsequent occasions.

When she stopped coming in to work in September 2001, Sapp had initially requested that her accrued sick leave be applied to her absences. She exhausted this leave by early 2002. On April 26, Sapp requested six weeks of advanced sick leave, submitting a letter from a doctor that stated that she was to be allowed off work, but which failed to provide an estimated date on which she could resume her duties. One of her supervisors, Danny Smith, denied this request. USPS policy requires those requesting advanced sick leave to provide

2

an anticipated date of return. The USPS then began to apply her accrued annual leave to her absences. On May 30, Sapp requested that her annual leave be restored and that she instead be placed on leave without pay status for her absences since exhausting her sick leave. On September 11, the USPS sent Sapp an invoice to buy back her annual leave.

On October 9 and 10, Sapp requested "work-restriction" and "light-duty request" forms and information about reasonable accommodations from three supervisors. None were able to provide her with these forms, allegedly because they do not exist. On their advice, Sapp submitted a request to Smith asking to return to work on light duty and for a nomination for referral to the District Reasonable Accommodation Committee ("DRAC"). In support of this request, she submitted medical evaluations from three physicians. One of these, from Dr. Ravikumar Kanneganti, diagnosed her with depression, dysthymia, and panic disorder, and instructed that if returned to work Sapp should have no contact with any of her former co-workers, and that she should "be relatively isolated from peers and supervisors." The second evaluation, from Dr. Shama Quraishi, stated that Sapp had no limitations at all. The third, from Dr. Jorge Raichman, diagnosed Sapp with paranoid personality disorder, and suggested that she should have no further contact with her previous co-workers, that she should be given an isolated position with little contact with co-workers or the public, and that she should not be placed in a position in which she would have to criticize others' work.

The DRAC found that Sapp was not disabled and further found that, regardless of her disability status, she was incapable of performing the essential functions of her position with or without accommodation. Sapp twice requested reconsideration of the DRAC's decision by the Southwest Reasonable Accommodation Committee ("SWRAC"), which upheld the DRAC's findings.

Nevertheless, she later requested a permanent light-duty assignment from Smith, who denied her request based on the DRAC's findings.

Beginning as early as September 27, 2001, Sapp had sought counseling with the Equal Employment Opportunity Commission ("EEOC"). She filed a number of formal complaints that were eventually consolidated, on June 17, 2003, into a single consolidated Equal Employment Opportunity claim ("EEO #1"). In it, she alleged discrimination on the basis of her race—Sapp is black—and gender, retaliation for Equal Employment Opportunity ("EEO") activity, discrimination on the basis of her disability, and a hostile work environment.

The events that allegedly supported these claims included Hale's proposal that Sapp relocate, Hale's change of her schedule, various complaints related to the docking of her annual leave after she stopped working, various complaints relating to the processing of her requests for light-duty assignments, and various complaints related to the DRAC's review process. An administrative judge entered an order on September 30, 2004, finding no discrimination, retaliation, or hostile work environment. The USPS affirmed this decision, and the EEOC's Office of Federal Operations did as well.

## B. EEO #2

On March 10, 2006, Sapp submitted a request to Smith to return to work and for reasonable accommodations. She also requested various forms related to disability accommodations that the USPS claims do not exist. Smith did not respond to Sapp until May 12, and on May 26 he denied Sapp's request for a permanent light-duty assignment. On Smith's request, Sapp submitted an updated medical evaluation from Dr. Kanneganti, whose assessment of Sapp's medical condition was unchanged from 2002. Sapp was referred to the DRAC for consideration of reasonable accommodations, and the DRAC promptly denied her request on November 9, 2006.

No. 12-41121

On the basis of these events and others related to her attempt to return to work on light duty during this timeframe, Sapp filed a second EEO complaint alleging discrimination on the basis of a mental disability and retaliation. An administrative judge denied this complaint on September 12, 2007, and the USPS affirmed this decision.

### C. *Termination*

On June 11, 2007, the USPS issued a notice of proposed separation to Sapp, indicating that it considered her unable to perform her duties. Subsequently, on September 5, the entire workforce at the Beaumont REC, including Sapp, received notice that their positions were being terminated pursuant to a reduction in force ("RIF"). The USPS rescinded its June 11 notice and a subsequent decision letter sent to Sapp regarding her termination, and Sapp's position was instead eliminated along with the rest of the staff of the Beaumont REC.

### D. *Litigation*

Sapp filed the instant matter in the district court on September 24, 2007, alleging claims arising from EEO #1, EEO #2, a further EEO claim she filed regarding her termination, and a panoply of other claims. The USPS filed a partial motion to dismiss all of Sapp's claims other than those related to EEO #1 and EEO #2, arguing that they were not administratively exhausted. The district court, adopting a magistrate judge's report and recommendations, issued a partial final judgment dismissing these claims, Sapp appealed to this court, and we affirmed the district court. *See Sapp v. Potter*, 413 F. App'x 750, 750-54 (5th Cir. 2011).

The claims that Sapp administratively exhausted in EEO #1 and EEO #2 were for discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, failure to accommodate under the Rehabilitation Act, discrimination under Title VII, 42 U.S.C. § 2000e-2 *et seq.*, retaliation under the Rehabilitation Act and

No. 12-41121

Title VII, and a hostile work environment under the Rehabilitation Act and Title VII. Sapp and the USPS filed cross motions for summary judgment on these claims. The district court, adopting the report and recommendations of a magistrate judge over Sapp's objections, granted the USPS's motion for summary judgment, denied Sapp's motion, and dismissed all of Sapp's remaining claims. Sapp timely appeals.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011). Summary judgment is appropriate where, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing FED. R. CIV. P. 56(a)).

## DISCUSSION

Sapp's voluminous pro se briefing does not clearly delineate which aspects of the district court's opinion she is challenging on appeal. She also appears to present facts and argue extensively about issues extraneous to the district court's order at issue in this appeal, and she otherwise raises issues not properly before the court. Liberally construing Sapp's briefs, *see Davison v. Huntington Ingalls, Inc.*, 712 F.3d 884, 885 (5th Cir. 2013), we deem her to be challenging the district court's dismissal of her Rehabilitation Act and Title VII discrimination and retaliation claims.

When a plaintiff relies on circumstantial evidence in the employment discrimination or retaliation context, we apply the *McDonnell Douglas* burden-shifting framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

> Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that the

plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) . . . suffered some adverse employment action by the employer; and (4) . . . was treated less favorably than other similarly situated employees outside the protected group.  To establish a prima facie case of retaliation, the plaintiff must establish that (1) he participated in [a protected activity]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

*Id.* at 556-57 (citations omitted).

Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.

*McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 280 (5th Cir. 2000).

### A. Rehabilitation Act Discrimination

Sapp contends that she was discriminated against on the basis of a disability, in violation of the Rehabilitation Act.  To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) she has a disability; (2) she was otherwise qualified for her job; (3) she worked for a program or activity receiving Federal financial assistance; and (4) that she was discriminated against "by reason of her . . . disability."  *See* 29 U.S.C. § 794(a); *Hileman v. City of Dall.*, 115 F.3d 352, 352 (5th Cir. 1997).  Sapp has failed to meet this burden.

We assess whether a plaintiff is otherwise qualified for a given job based on whether (1) "the individual could perform the essential functions of the job"; and, (2) if not, "whether any reasonable accommodation by the employer would enable him to perform those functions." *Chandler v. City of Dall.*, 2 F.3d 1385, 1393-94 (5th Cir. 1993).  As explained below, the evidence suggests either that

Sapp could perform the essential functions of her job or that she was not disabled.

Two of the three medical evaluations that Sapp submitted in her request to return to light duty state that Sapp could only return to work under conditions in which she would have no contact with her former co-workers at the Beaumont REC and in which she would have little contact with any co-workers or the public. Uncontested record evidence indicates that REC supervisors are required as a part of their job to have extensive contact with their subordinates. These evaluations, if credited, demonstrate that Sapp could not perform the essential functions of her job.

There is also evidence in the record that tends to contradict these medical evaluations, namely the medical evaluation by Dr. Quraishi that Sapp submitted. Doctor Quraishi's report stated that Sapp "has been under my care and *no longer has limitations*" (emphasis added). Were Dr. Quraishi's report to be credited by a fact finder over the other two evaluations, Sapp would fail to show that she was disabled at all. *See* 29 U.S.C. § 705(20)(A). As a result, we agree with the district court that Sapp has failed to state a prima facie case of discrimination under the Rehabilitation Act, because uncontroverted record evidence indicates either that Sapp was not otherwise qualified for her job or that Sapp was not in fact disabled. *See Hileman*, 115 F.3d at 352.

Sapp also contends that the USPS failed to make reasonable accommodations of her disability. If true, such a failure would constitute discrimination under the Rehabilitation Act. Sapp's only substantive argument on this ground is that she could have been assigned to a different position by the USPS in which she could have functioned despite her limitations. However, Sapp has failed to introduce evidence of any such position that was available contemporaneously with the time periods that are the subject of her two EEO actions. As the plaintiff bears the burden of showing a failure to accommodate

under the Rehabilitation Act, *see Riel v. Elec. Data Sys. Corp*, 99 F.3d 678, 683 (5th Cir. 1996) (holding so in the context of an Americans with Disabilities Act ("ADA") claim); *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) (holding that "jurisprudence interpreting either" the ADA or the Rehabilitation Act "is applicable to both" (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000))), this deficiency is fatal to her argument.

### B. Title VII Discrimination

Sapp also contends that she was discriminated against on the basis of her race and gender. Her claim on this ground fails because, as noted by the district court, she has failed to identify a similarly situated employee not in one of her protected classes who was treated more favorably. *See McCoy*, 492 F.3d at 556.

She first points to a number of other employees from the Beaumont REC who were transferred to different positions after their positions were terminated as a part of the reduction in force. However, as the events related to the RIF and Sapp's ultimate dismissal fall outside of the bounds of the first and second EEOs, they were not the subject of the district court's order below and are not properly before us now.

Other than these employees, the only specific employee Sapp points to was a white woman who was given a light-duty assignment as a result of a physical disability. Because her disability was physical and Sapp's limitations were psychological in nature, they were not similarly-situated and the purported disparate treatment between them cannot form the basis for a Title VII discrimination claim. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) ("In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004))).

### C. Retaliation

No. 12-41121

Sapp alleges that a number of actions taken by the USPS were in retaliation for her EEO activity, specifically the denial of her request for six weeks of advanced sick leave in April 2002, her subsequent placement on leave-without-pay status, various instances when USPS officials did not respond to her requests related to her limitations as quickly as she would have liked, and the USPS's failure to reassign her to a new position as an accommodation. Assuming *arguendo* that Sapp has stated a prima facie case of retaliation, we nevertheless hold that her claim fails as a matter of law because the USPS has provided legitimate non-retaliatory reasons for each of its actions, and Sapp has failed to carry her burden of showing that these reasons were pretextual. *See McInnis*, 207 F.3d at 280.

The USPS presented evidence that the denial of advanced sick leave was due to Sapp's failure to comply with a policy requiring provision of an estimated date of return to work when requesting sick leave. It also presented evidence that Sapp was placed on leave-without-pay-status after she requested that her absences not be credited against her accrued annual leave. With respect to the delays in responding to Sapp's various requests, the USPS presented evidence that the requests either asked for forms that did not exist or were delayed because of the complexity of Sapp's file. Finally, it presented evidence that Sapp never proposed a reasonable accommodation in the form of a reassignment or otherwise.

These non-retaliatory rationales for the incidents underlying Sapp's retaliation claim shift the burden back to her to show pretext. Sapp has pointed to no valid evidence that tends to show that the USPS's advanced rationales were pretextual, other than temporal proximity of her EEO activity and the complained-of actions. But "[t]emporal proximity, standing alone, is not enough" to show pretext, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012), and we hold that she had failed to meet her burden as a result.

10

No. 12-41121

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 12-41121

HIGGINBOTHAM, Circuit Judge, specially concurring:

I concur fully in the Court's opinion, and write separately only to note that a Title VII discrimination claim will fail for lack of comparator evidence only when there is a want of other evidence of discrimination. Comparator evidence is but one form of circumstantial evidence that may be used in proving the ultimate question of discrimination.[1]   Accordingly, Sapp's Title VII discrimination claim fails because she has failed to identify a similarly situated employee not in one of her protected classes who was treated more favorably and she has failed to adduce any other evidence — circumstantial or direct — that the USPS discriminated against her on the basis of her race or gender.

---

[1] *See,e.g., Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 278 (5th Cir. 2011) (Dennis, J., dissenting) ("Comparator evidence is only one form of circumstantial evidence that may be useful, but is not necessary, to prove the ultimate question of discrimination vel non, and circumstantial evidence itself is not required where there is direct evidence.").