# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 3, 2013

Lyle W. Cayce
Clerk

No. 13-10159
Summary Calendar

DEREK WILLIAM THOMAS,

Plaintiff–Appellant,

versus

JANET NAPOLITANO,
Secretary of the Department of Homeland Security,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-265
USDC No. 3:11-CV-889
USDC No. 3:11-CV-3398

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10159

Derek Thomas appeals a judgment dismissing his claims regarding his federal job. We affirm.

I.

A.

Thomas is a Federal Air Marshal ("FAM") at the Federal Air Marshal Service's ("FAMS") Dallas Field Office ("DFO") under the Transportation Security Administration ("TSA"). Hired in January 2002, Thomas was diagnosed in October 2007 with Type I diabetes mellitus, a fact he reported to the FAMS Medical Branch that same month. Soon thereafter, the DFO—in compliance with regulations in effect from November 1997 to December 2007 that disqualified an individual with a clinical diagnosis of diabetes mellitus from being a FAM— removed Thomas from flight status.

In November 2007, Thomas requested he be placed in a light-duty assignment while the FAMS Medical Unit evaluated how well his diabetes could be controlled; that request was denied. In March 2008, however—at the request of the Office of the Director of FAMS—Thomas was placed in a light-duty assignment, and in October 2008 the Medical Unit cleared him to return to full duty. Throughout the time he was denied a light-duty assignment, Thomas used 192 hours of annual leave and over 88 hours of sick leave; that leave was not restored.

Thomas first complained of discrimination to the Office of Civil Rights and Liberties in July 2008, alleging that he was subject to a hostile work environment based on his disability (diabetes), reprisal, and sex (male). It was that discriminatory attitude toward his disability and sex—Thomas alleges—that served as the impetus for denial of his request for a light-duty assignment and for the DFOs not restoring his sick and annual-leave time spent upon its denial, among other conditions supporting his claim of a hostile work environment. These

No. 13-10159

issues was later accepted for investigation by the TSA in October 2008.

B.

In October 2009—a year after Thomas had returned to full duty—FAMS Director Robert Bray announced a newly instituted Senior Federal Air Marshal ("Senior FAM") program intended to recognize FAMs who serve as role models, have a broad knowledge base of the FAMS, and have a significant experience flying-mission status. Bray also provided the minimum qualifications for designation as a Senior FAM.

In evaluating its own FAMs for designation as Senior FAMs, the DFO added to the minimum qualifications stated by Bray: The applicant must also be above the office average in both their Quarterly Fitness Assessments ("QFA") and their Practical Pistol Course ("PPC"). Although Thomas met all of the minimum qualifications, he was below the office average in his QFA and PPC and, as a result, was not selected as a Senior FAM.

Additionally, the following year Thomas's flight schedule was altered on two separate occasions without notice of the change, although email notice was received by his flight partner. Thomas learned of the change only because he routinely checks his TSA online schedule portal.

In response, Thomas filed two more Equal Employment Opportunity ("EEO") complaints that allege discrimination on the basis of race (black) and reprisal (previous EEO activity). It was this intent to discriminate and retaliate, the complaints allege, that led to the DFO's use of the QFA and PPC metric, which kept him from being selected as a Senior FAM, and that precipitated the change in Thomas's work schedule without notice. The TSA accepted the issues in these complaints for investigation in May 2010 and February 2011.

No. 13-10159

## C.

Based on the foregoing events, Thomas sued, alleging discrimination based on race, sex, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; perceived disability under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; and the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and a hostile work environment. The district court held a three-day bench trial on these claims during which eighteen witnesses testified. In a thorough, forty-one-page opinion, the court found Thomas's claims to be unproven by a preponderance of the evidence and dismissed them on the merits.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311, 316 (5th Cir. 2012). Because there is no dispute on appeal as to the law of this circuit regarding Thomas's claims of sex and race discrimination under Title VII,[1] disability discrimination under the Rehabilitation Act,[2] hostile work environment under Title VII,[3] and

---

[1]    To establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

[2]    To qualify for relief under the Rehabilitation Act, a plaintiff must prove that (1) he is an individual with a disability; (2) who is otherwise qualified; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that he was dis-

(continued...)

No. 13-10159

retaliation,[4] and a *de novo* review finds this law to be properly understood and applied by the district court, we focus on the main issue on appeal: whether the court ignored credible evidence and erred in finding there to be no discrimination or discriminatory intent in the DFO's actions.

There is broad agreement as to the facts as presented above. The only disagreement concerns whether those actions constitute actionable discrimination or retaliation. Determinations of intentional discrimination and discriminatory

---

[2] (...continued)
criminated against solely by reason of her or his disability.

*Hileman v. City of Dall., Tex.*, 115 F.3d 352, 353 (5th Cir. 1997) (citation and internal quotation marks omitted).

[3]     To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.

*EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

[4] "To state a claim for retaliation, a plaintiff must establish that: (1) he engaged in protected activity, as described in Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). To show that he has suffered an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Although Thomas argues that the district court made an error of law in additionally considering whether the actions in question constitute "ultimate employment decisions" under Fifth Circuit jurisprudence after the Supreme Court in *Burlington* seemingly abrogated this approach in the retaliation context, *see McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007), we need not address that issue because the court's application of the definition of "adverse employment action" in *Burlington* is sufficient to dispose of this case.

No. 13-10159

intent are findings of fact governed by Federal Rule of Civil Procedure 52(a).[5]

Under Rule 52(a), "[f]inding of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous."[6]  "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony."[7]  Additionally, "[w]e will reverse under the clearly erroneous standard only if we have a definite and firm conviction that a mistake has been made."[8]

Where, as here, the findings of fact are largely based on credibility, Rule 52(a) states that "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  This has been interpreted to "demand[] even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 270 U.S. at 575.

Based on our reading of the record and in light of this highly deferential standard, the findings are not clearly erroneous. The district court, in its role as finder of fact, made credibility determinations regarding the witnesses. According to those logical and plausible decisions, the court found no intentional discrimination or discriminatory intent based on sex, race, or disability in the

---

[5] *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985) (stating that "a finding of intentional discrimination is a finding of fact"); *Pullman–Standard v. Swint*, 456 U.S. 273, 285–87 (1982) (reversing the Fifth Circuit and holding that discriminatory intent is a finding of fact).

[6] *See also Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 388 (5th Cir. 2012).

[7] *Id.* (citation and internal quotation marks omitted).

[8] *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011) (citation and internal quotation marks omitted).

No. 13-10159

DFO's actions, whether it be denying Thomas's request for a light-duty assignment, failing to restore his sick and annual leave, utilizing the QFA and PPC in awarding Senior FAM status, or rescheduling his work schedule without notice. The court also found that there was not enough evidence to suggest these same actions constituted retaliation based on the very same findings regarding the oral evidence, both in terms of not meeting the standard of an adverse employment action and in not showing a causal nexus between his protected activity and the adverse employment action.

The judgment is AFFIRMED.