# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2018

Lyle W. Cayce
Clerk

No. 17-20571

PROVIDENCE BEHAVIORAL HEALTH; TEXAS PROVIDENCE INVESTMENTS,

      Plaintiffs - Appellants Cross-Appellees,

v.

GRANT ROAD PUBLIC UTILITY DISTRICT, ROBERT KRZESZKIEWICZ, in his official capacity; WILLIAM ROCK, in his official capacity; JACK SCOTT, in his official capacity; JOHN ONEACRE, in his official capacity; THOMAS BREEDLOVE, in his official capacity,

      Defendants - Appellees Cross-Appellants

BOARD OF DIRECTORS OF THE GRANT ROAD PUBLIC UTILITIES DISTRICT,

      Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JONES and ENGELHARDT, Circuit Judges.

CARL E. STEWART, Chief Judge:

      Providence Behavioral Health ("Providence Health") and Texas Providence Investments ("Providence Investments") (collectively, "Providence") brought this lawsuit against Grant Road Public Utility District, the Board of Directors of the Grant Road Public Utility District ("Grant Road

No. 17-20571

Board"), and Grant Road Board members, Robert Krzeszkiewicz ("Krzeszkiewicz"), William Rock ("Rock"), Jack Scott ("Scott"), John Oneacre ("Oneacre"), and Thomas Breedlove ("Breedlove"), in their official capacities (collectively, "Grant Road") after Grant Road denied water, drainage, and septic services to Providence's intended psychiatric facility. Providence believes improper, discriminatory motives played a role in Grant Road's decision to deny Providence access to water, drainage, and septic services. Providence contends that Grant Road's actions constituted violations of the Americans with Disabilities Act ("ADA"), federal Fair Housing Act ("FHA"), and Texas Fair Housing Act ("TFHA").

Following a three-day bench trial, where both parties presented evidence relating to whether there were discriminatory motives underlying Grant Road's decision, the district court issued findings of fact and conclusions of law to support its judgment dismissing Providence's claims. On appeal, Providence asserts that the district court erroneously concluded that Grant Road's denial decision was not discriminatory. For the reasons set out below, we AFFIRM the district court's judgment.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.  Factual Background

The issues in this case revolve around Providence's application to Grant Road seeking annexation for its Providence Health facility to obtain water, drainage, and septic services. After all, without water, drainage, and sewage capabilities, the Providence Health facility cannot function as it should.

### 1.  Providence Investments and Providence Health

Providence Investments owns a 12.9 acre tract of land in Cypress, Texas where it currently is constructing a facility that will be operated by Providence Health. The facility is intended to be a for-profit mental health treatment

2

center for patients under eighteen years of age who have mental health diagnoses, including autism spectrum disorder, bipolar disorder, and schizophrenia. Dr. Luis Valdes ("Dr. Valdes") and Dr. Javier Ruiz ("Dr. Ruiz") are expected to lead operations of the Providence Health facility. The Providence Health facility aims to provide more than just outpatient psychiatric care for its patients. One of the featured aspirations for the facility is to create a home-like atmosphere where patients have the option to live at the facility for up to a year's time, if necessary.

2. *Grant Road and the Annexation Process*

At its core, Grant Road is a water well and distribution system, and a sewer collection and treatment system. The mission of Grant Road is to provide water, septic, and drainage services to properties within the boundaries of its district. Grant Road is funded by water and sewage revenues and ad valorem taxes from properties within Grant Road's district. If a piece of property outside of Grant Road's district boundaries wishes to come under the umbrella of services that Grant Road provides, then the land developer or representative for the property must request annexation of the property by Grant Road. Specifically, "annexation" is bringing into Grant Road's water district a property that lies outside of Grant Road's district boundaries for purposes of providing utility services to that property. Typically, Grant Road has no obligation to provide annexation to property outside of Grant Road's jurisdictional boundaries. The Grant Road Board, a five-person elected board of directors, governs the Grant Road Public Utility District and is centrally involved in the annexation decision-making process.

3. *Grant Road's Refusal to Annex Providence's Facility*

In the summer of 2009, Providence hired Steven Grossman ("Grossman") as a project architect to assist with the building process for the Providence

Health facility. At the bench trial, Grossman testified that before Grant Road's annexation denial in 2014, he had never been connected to a building project that resulted in an annexation denial by a public utility district. Grossman contacted Grant Road so that the topic of annexation for the Providence Health facility could be placed on the agenda for the Grant Road Board meeting for October 2009. At the October 2009 meeting, Grossman presented to the Grant Road Board full-scale drawings, features, and general dimensions of the Providence Health facility. At trial, Grossman described that the Grant Road Board members "were interested" and he thought the reaction to the presentation "was absolutely favorable." In February 2010, Grant Road sent a letter to Providence noting its preliminary approval of the annexation for the Providence Health facility and advising Providence of the additional requirements Providence needed to satisfy to complete the process. This included paying a customary deposit to Grant Road, projected to be $7,500. However, delays in the construction project due to financing issues, and professional challenges for the operators of the Providence Health facility, caused the 2009–10 annexation process to be derailed and later terminated by Providence.

In the summer of 2014, Providence again set the annexation process in motion for its Providence Health facility. Grossman's expectation for this new annexation proposal for the Providence Health facility was "the same song, second verse" ending with Providence obtaining approval for annexation. This time around, though, the building project included some new features not present when Providence submitted the 2009–10 annexation proposal. For example, the building project proposal from 2009–10 entailed a twenty-four bed facility that was expandable to accommodate thirty-two beds. In contrast, the new 2014 annexation proposal for the facility was proposed as a thirty-six

bed facility able to expand to accommodate fifty-two beds. The additional beds added to the facility increased the amount of service units for the facility from twenty-seven to thirty-one.[1]

In September 2014, Grossman, accompanied by Dr. Valdes as one of the principal operators for the facility, presented to the Grant Road Board once more, requesting that the Providence Health facility be annexed. Grossman testified at the bench trial that, although the 2014 annexation presentation was more extensive than the 2009–10 annexation presentation that received preliminary approval, the Grant Road Board was "hostile" to the 2014 presentation, and he and Dr. Valdes received little questioning from the board members. Grossman described that "the members would turn their back on the presentation. Some would look out the window. They were . . . disinterested in entertaining our proposal whatsoever or had prejudged the case or something to that effect." Grossman went on to articulate that the Grant Road Board asked no questions about tax abatements, project history, investors, or financing. The Grant Road Board did, however, ask questions about the individuals anticipated to receive mental health treatment at the Providence Health facility.

Providence's hopes to achieve preliminary approval for annexation were soon dashed. After Grossman and Dr. Valdes presented to the Grant Road Board at the September 2014 meeting, the Grant Road Board met and unanimously voted against annexation for the Providence Health facility. The Grant Road Board did not state any specific reasons for its rejection of the annexation request. Testimony from board members Scott and Krzeszkiewicz at the bench trial revealed that over a thirty-year period, out of the

---

[1] Service units are a calculation metric utilized by Grant Road to estimate usage of water in gallons per day for the facility.

approximately twelve to fifteen annexation requests that the Grant Road Board received, annexation had only been denied on two other occasions.

At the bench trial, Grant Road Board members testified about why they voted to reject the annexation request, focusing on financial implications posed by annexing the property. Particularly, board members explained they were concerned that tax abatements for the facility would ultimately impact the revenue of the district. The Grant Road Board believed that medical facilities are usually one of the types of facilities able to get tax abatements. Testimony from the bench trial further revealed that a high-end residential development annexed into the Grant Road district was projected to produce more revenue to the Grant Road tax base than a single facility, like the Providence Health facility. Additionally, the Providence Health facility was said to have other feasible avenues for obtaining water and sewage, such as obtaining a well and septic system permit or a Texas Commission on Environmental Quality permit for an onsite sewage and wastewater treatment plant. At a subsequent November 2014 Grant Road Board meeting, the Grant Road Board reheard a presentation from Providence and declined to reconsider its decision to deny annexation for the facility.

Providence asserts that Grant Road is using financial concerns as a pretext for the actual discriminatory reasons underlying the decision against annexation. Prior to the November 2014 board meeting, Grant Road's retained attorney, who functionally served as Grant Road's general counsel at the time, received an email from Providence threatening to sue Grant Road for discrimination because of the annexation denial. Attached to the email was a draft complaint where Providence alleged claims for violations of the ADA, FHA, and TFHA. Providence learned that there was possibly community pressure driven by a prominent local commercial real estate developer, urging

the Grant Road Board to reject annexation for the Providence Health facility because it would treat youths suffering from various mental illnesses. Providence further alleged that community members raised concerns that the Providence Health facility would create a negative public perception of the community and decrease property values. Additionally, after the annexation denial, Dr. Valdes called Grant Road's attorney, who indicated that the Grant Road Board had recently been through a contested election process and was sensitive to the community's scrutiny. Grant Road's attorney further allegedly expressed that the Grant Road Board was facing an upcoming bond election and needed the community's support to vote for additional bonds to serve other developments that had been brought into Grant Road's district.

As an alternative to Grant Road approving annexation, Providence applied to the Harris County Engineering Department for permits for a well and septic system. Providence only succeeded in receiving a permit for a well system. Because a septic system permit is necessary for the Providence Health facility to be operational, Providence applied to the Texas Commission of Environmental Quality for a permit to operate a sewage wastewater treatment plant at the facility, called a "package plant." At oral argument, Providence explained that it recently obtained a permit from the Texas Commission of Environmental Quality to operate a package plant at the Providence Health facility. However, operating a package plant at the Providence Health facility would drastically change Providence's design for the building project. Providence alleges that the inability to obtain wastewater treatment from Grant Road has stymied the construction of the Providence Health facility.

### b. Procedural History

After Grant Road's denial of the annexation request, Providence filed this lawsuit in March 2015. Providence alleged that the Grant Road Public

No. 17-20571

Utility District, Krzeszkiewicz, Rock, Scott, Oneacre, and Breedlove in their official capacities, and the Grant Road Board, violated the ADA, FHA, TFHA, and Fourteenth Amendment by denying annexation for the Providence Health facility. Providence sought injunctive relief to compel Grant Road to annex the facility.

In August 2017, after a bench trial addressing the merits of Providence's claims, the district court entered judgment in favor of Grant Road. The district court held that Providence failed to prove its ADA, FHA, TFHA, and Fourteenth Amendment claims, and denied Providence's request for injunctive relief. Providence timely appealed.

## II.    DISCUSSION

On appeal, Providence asserts that the district court erred in holding Providence failed to prove its claims. Particularly, Providence argues that it proved by a preponderance of the evidence that Grant Road: (1) intentionally discriminated against it in violation of the ADA, FHA, and TFHA; and (2) denied it reasonable accommodations in violation of the ADA and FHA.[2] Grant Road subsequently cross appealed, asserting that the district court erred by failing to hold that Grant Road was entitled to recover reasonable and necessary attorneys' fees from Providence.

### a.  Standard of Review for Providence's Claims

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Coe v.*

---

[2] On appeal, Providence does not raise any arguments relating to its Fourteenth Amendment claim. Thus, the issue is waived. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal . . . A party who inadequately briefs an issue is considered to have abandoned the claim.").

Moreover, because of the similarities between the ADA, FHA, and TFHA, this opinion will address the claims relating to these statutes collectively. The slight differences in the respective statutes do not impact the analysis for this case.

No. 17-20571

*Chesapeake Exploration, L.L.C.,* 695 F.3d 311, 316 (5th Cir. 2012); *see also* Fed. R. Civ. P. 52(a)(6). A finding made by the district court "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). Put differently, "[a] finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Petrohawk Prop., L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir. 2012). Moreover, when the findings of fact by the district court are largely based on the credibility of individuals testifying at trial, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see also Thomas v. Napolitano*, 542 F. App'x 316, 320 (5th Cir. 2013) (unpublished). "[F]or only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575 (citing *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)).

### b. Grant Road's Eleventh Amendment Sovereign Immunity Defense

Grant Road argues that it is incapable of being sued in federal court because it is an instrumentality of the state of Texas and, therefore, protected by Eleventh Amendment sovereign immunity.[3] *See Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280–81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both

---

[3] Grant Road raised this argument before the district court and, therefore, preserved it on appeal.

9

money damages and injunctive relief unless the state has waived its immunity."). Providence does not challenge Grant Road's assertion that it is an instrumentality of the state. Regardless, this court has a duty to analyze its own jurisdiction de novo. *See Smith v. Booth*, 823 F.2d 94, 96 (5th Cir. 1987). And after reviewing the record, we are persuaded that Grant Road does not enjoy Eleventh Amendment sovereign immunity because it is a local government entity, not an instrumentality of the state of Texas.

While instrumentalities of the state enjoy sovereign immunity, "the Eleventh Amendment does not extend its immunity to units of local government." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001). To determine whether a unit of government belongs to state or local government, we employ the six-factor test developed in *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736 (5th Cir. 1986). The six factors are:

> 1. Whether the state statutes and case law view the agency as an arm of the state;
>
> 2. The source of the entity's funding;
>
> 3. The entity's degree of local autonomy;
>
> 4. Whether the entity is concerned primarily with local as opposed to statewide, problems;
>
> 5. Whether the entity has the authority to sue and be sued in its own name; and
>
> 6. Whether the entity has the right to hold and use property.

*Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999).

The goal of this test is to determine "whether the suit is in reality a suit against the state itself." *Id.* at 682 (quoting *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)). Though the test is not necessarily precise, it helps us "balance the equities and determine as a general matter" how the entity should be classified. *Id.*

Applying our six-factor test, we are convinced, on balance, that Grant Road is not an instrumentality of the state. First, while Grant Road was created under the auspices of state law, this fact proves too much—"every entity claiming Eleventh Amendment immunity is a 'creature' of some state law." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 939 (5th Cir. 2001). Second, and most importantly, Grant Road's funding comes from its own revenue, as well as local taxes and fees, all of which are independent of the Texas state treasury. *Williams v. Dall. Area Rapid Transit*, 242 F.3d 315, 320 (5th Cir. 2001) (holding that the second factor—source of funds—is "the most important one"). Third, Grant Road is generally autonomous because its members are locally elected, not appointed by state officials. While Grant Road is "subject to oversight" by the Texas Commission on Environmental Quality, such oversight does not necessarily amount to meaningful state control. *Cf. id.* at 321 (finding periodic state audits to undermine only slightly a local entity's autonomy). Fourth, Grant Road is tasked with regulating water and controlling soil pollution, both of which are functions of statewide interest according to the Texas Supreme Court. *Bennett v. Brown Cty. Water Imp. Dist. No. 1*, 272 S.W.2d 498, 502–03 (1954). The fifth and sixth factors—Grant Road's authority to sue and be sued in its own name and its right to hold and use property—both suggest Grant Road is a local entity.

In sum, these factors, including the important source-of-funding factor, indicate, on the whole, that Grant Road is a local entity and, therefore, not entitled to sovereign immunity.

### c. Providence's Intentional Discrimination Claims

Providence argues that deference to the trial court is not automatic and that the district court's conclusion that there was no discrimination was unsupported by any evidence presented during the bench trial. Moreover,

Providence contends that it proved discrimination by showing that Grant Road had animosity towards Providence Health's potential psychiatric clients and that community pressure influenced the Grant Road Board's decision. We disagree. After allowing both sides to present evidence to support their respective positions during a three-day bench trial, the district court rested its conclusion on testimony from Grant Road Board members who stated that they based their decision on financial considerations rather than on the disabilities of the potential patients of Providence.

The ADA, FHA, and TFHA all prohibit governmental entities from discriminating against individuals with disabilities. *See* 42 U.S.C. § 12132 (Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity"); 42 U.S.C. § 3604(f)(1) (the FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap"); Tex. Prop. Code Ann. § 301.025 (the TFHA makes it unlawful to "discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a disability"). To establish intentional discrimination based on a disability, Providence must prove by a preponderance of the evidence: "(1) that [Providence's potential patients have] a qualifying disability; (2) that [Providence] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by [Grant Road]; and (3) that such discrimination is by reason of [Providence's potential patient's] disability." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017) (citing *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)).

No. 17-20571

Despite Providence's arguments, the district court found the testimony supporting Grant Road's position to be more convincing. Here, based on its factual findings, the district court determined that Providence failed to carry its burden in proving that Grant Road discriminated against Providence. After Grant Road presented evidence, the district court found that the Grant Road Board considered the value of the building project, the demand on the current utility system, and the value that the Providence Health facility building project would add to Grant Road's district. Importantly, when asked during the bench trial, "with respect to the population of the patients, did that issue play a role in your part to deny annexation?" Krzeszkiewicz replied, "No." Similarly, when Scott was asked, "did you have any reaction to the fact that the facility was going to be a psychiatric care facility?" Scott responded, "No."

The testimony of Krzeszkiewicz and Scott also provided support for the financial reasons that Grant Road pointed to for the annexation denial. Krzeszkiewicz, a retired accountant and Grant Road Board member for thirty years, testified during the bench trial that he considered financial implications, such as what the value of the property is and what value that the annexation adds to the current tax base when making the annexation decision. Krzeszkiewicz explained that if the entity fails, Grant Road "would possibly be left holding the bag for any construction costs for the infrastructure as well as a loss of revenue to [Grant Road's] tax base." Similarly, Scott, a Grant Road Board member for over forty years, articulated that if the Providence Health facility building project failed, Grant Road would not have had any way to recoup the costs of running the pipes for the water and sewage services to the Providence Health facility. Since Providence was not as experienced with developing land, the Grant Road Board projected a higher possible likelihood that the Providence Health building project would fail.

13

In relation to Providence's presentation to the Grant Road Board, Krzeszkiewicz explained that the presentation from Providence was also "poorly developed" and he "would expect that the plaintiff would have done more homework as far as going to the board, providing some . . . financial information." Moreover, Scott noted that the presentation to the Grant Road Board was poorly developed because financial information relating to water usage and return on investment for the construction project was missing.

Grant Road also cited tax abatements for the Providence Health facility as a reason for how annexation could decrease the amount of revenue contributed to the tax base. Scott testified that the main reason for his decision against annexation of the Providence Health facility was because "[t]here just wasn't going to be enough tax return." Scott stated that although he did not ask questions relating to tax abatements during the September 2014 Grant Road Board meeting, he realized that the Providence Health facility would likely receive tax abatements which bring down the taxable value.

All of the evidence of discrimination presented by Providence was based on speculation rather than actual proof of Grant Road's discriminatory motives. Providence presented evidence attempting to show that a combination of events involving community pressure, politics, and lack of questioning proved Grant Road discriminated. Providence highlights that Grant Road's discriminatory motives were displayed when the Grant Road Board only primarily asked about the population of psychiatric patients intended to be treated at the facility when evaluating whether to approve annexation. Testimony from Grant Road's attorney also revealed that he speculated to Dr. Valdes that reasons for the Grant Road Board's annexation denial could be attributed to the negative perception a mental health facility created for the community. Providence presented evidence that a local real estate developer

contacted the Grant Road Board and allegedly later spread negative information about a mental health facility being present in the community. Grant Road's attorney further speculated that the annexation decision might have been swayed by politics within the Grant Road Board positioning for a favorable bond election vote in November 2014. All of the reasons provided by Providence, however, only speculatively point to possible discriminatory motives.

During the bench trial, Providence presented its theory for why there was discrimination by Grant Road, and alternatively Grant Road presented its theory for why the annexation request was denied. Considering the evidence presented by Providence and Grant Road, the district court then made findings of fact and concluded that Providence failed to carry its burden to prove its discrimination claims. Simply put, the district court gave Providence every opportunity to make its case and Providence failed to do so. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575; *see also Thomas*, 542 F. App'x at 320 ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility . . . for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). Thus, the district court did not commit reversible error when dismissing Providence's intentional discrimination claims under the ADA, FHA, and TFHA.

No. 17-20571

#### d. Providence's Reasonable Accommodation Claims

Providence lodges the claim that Grant Road failed to provide a reasonable accommodation to Providence and its potential patients because the facility was denied access to water, drainage, and septic services. Providence asserts that even though access to utilities did not negate the disabilities of the potential patients that Providence planned to treat at the facility, the access to sewage and water constituted a reasonable accommodation for individuals who had mental illness to have access to the local community.

To prove its reasonable accommodation claims under the ADA, Providence was required to show by a preponderance of the evidence that: "(1) [Providence's potential patients are] qualified individual[s] with a disability; (2) the disability and its consequential limitations were known by [Grant Road]; and (3) [Grant Road] failed to make reasonable accommodations for such known limitations." *See Jin Choi v. Univ. of Tex. Health Sci. Ctr. of San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (per curiam) (unpublished) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)); *see also* 42 U.S.C. § 12131(2). Under the FHA, a public entity engages in a discriminatory practice if it refuses to make a "reasonable accommodation" to "rules, policies, practices or services when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Reasonable accommodation claims under the FHA and ADA both require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled.

Here, providing water, drainage, and septic services has no relation to accommodating the expected disabilities of the patients planned to be treated

at the Providence Health facility. Contrary to Providence's argument that the district court neglected to address the reasonable accommodation issues, the district court found "[i]rrespective of whether the [Providence Health facility] was to be developed into a psychiatric hospital, an office building, or a condo development, it would need water and wastewater services . . . The need for water and wastewater is not unique to the fact that the [Providence Health facility] will be a psychiatric facility." Importantly, the failure to provide sewage and water services to the Providence Health facility did not create a situation where disabled individuals had an unequal ability to use and enjoy the facility compared to individuals who do not have a disability. *See* 42 U.S.C. § 3604(f)(3)(B); 42 U.S.C. § 12131(2).

Moreover, Providence's theory that Grant Road failed to make reasonable accommodations under the ADA and FHA for the facility is unsupported.  Providence does not cite to a case from this circuit or any other circuit which supports that the denial of utilities for a facility intended to serve disabled individuals amounts to a reasonable accommodation claim. Accordingly, the district court did not err when it dismissed the reasonable accommodation claims raised by Providence. *See, e.g.*, *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003) ("The whole purpose behind the FHA[] and ADA reasonable accommodation provisions is to prohibit local governments from applying land use regulations in a manner that will . . . give disabled people less opportunity to live in certain neighborhoods than people without disabilities . . . . Cutting off water prevents anyone from living in a dwelling, not just handicapped people, and therefore the prohibitions found in the FHA[] and the ADA do not apply to this case.") (quotation marks and citation omitted).

No. 17-20571

### e. Grant Road's Cross Appeal for Attorneys' Fees

The ADA and FHA authorize the court in its discretion to award attorneys' fees to a "prevailing party." *See* 42 U.S.C. § 12205 ("[T]he court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."); 42 U.S.C. § 3613(c) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs."). In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, the Supreme Court established that a prevailing defendant may not receive attorneys' fees "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. 412, 422 (1978). "In contrast to prevailing plaintiffs in civil rights actions, who should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust . . . prevailing defendants *may* receive fees." *Vitale v. Ga. Gulf Corp.*, 82 F. App'x 873, 876 (5th Cir. 2003) (emphasis in original) (quotation marks and citation omitted) (unpublished) (citing *Christiansburg Garment Co.*, 434 U.S. at 422).

Grant Road argues that because it was clear throughout the litigation that Providence had not suffered irreparable harm, the district court erred by not finding Providence's claims to be "frivolous, unreasonable, or groundless, or that [Providence] continued to litigate the case after it clearly became so." *See Christiansburg Garment Co.*, 434 U.S. at 422. Grant Road additionally asserts that it never actually moved for attorneys' fees as required by Federal Rule of Civil Procedure 54(d)(2) because the district court never found Grant Road to be a "prevailing party" under the FHA and ADA. Grant Road's arguments for attorneys' fees are unavailing. Even if Grant Road was correct in asserting that the district court erred by failing to find Grant Road to be a

"prevailing party," Providence's lawsuit against Grant Road is not frivolous, unreasonable, or groundless.

"Here, the district court issued its final ruling only after a contested bench trial where both parties presented a case—a fact that weighs against a finding of frivolousness." *Braud v. Spell*, 667 F. App'x 443, 444 (5th Cir. 2016) (per curiam) (unpublished). First, the district court had a preliminary injunction hearing where the district court addressed the necessary elements for Providence to receive injunctive relief, including whether Providence would suffer irreparable harm if the injunction were to be denied. Later at the bench trial, the parties continued to debate whether Providence acquiring a well and septic system permit from the Harris County Engineering Department or a permit from the Texas Commission on Environmental Quality for a package plant at the Providence Health facility was a viable form of alternative relief. Thus, the district court did not abuse its discretion when it declined to hold that Grant Road was entitled to attorneys' fees. *See Vitale*, 82 F. App'x at 876 (holding the district court did not abuse its "sound discretion" in denying the prevailing defendant attorneys' fees that the defendant sought in connection with the district court's grant of its motion for judgment as a matter of law dismissing the plaintiff's ADA claims).

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Providence's claims and denying Grant Road attorneys' fees.