# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2021

Lyle W. Cayce
Clerk

No. 20-50185

HARMONY HAUS WESTLAKE, L.L.C.; LING ZHOU,

*Plaintiffs—Appellees Cross-Appellants*,

*versus*

PARKSTONE PROPERTY OWNERS ASSOCIATION, INCORPORATED,

*Defendant-Counter Plaintiff—Appellant Cross-Appellee*,

*versus*

FENGLIN DU,

*Counter Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-1034

Before BARKSDALE, SOUTHWICK, and GRAVES, *Circuit Judges*.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-50185

Primarily at issue is whether Parkstone Property Owners Association, Inc. (Parkstone), the homeowners association (HOA) governing the Parkstone gated community in Austin, Texas, violated the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.*, by denying Harmony Haus Westlake, L.L.C.'s (Harmony Haus), request to operate a sober-living home with 12 residents. Also at issue is whether the district court erred in: ruling Parkstone waived its breach-of-contract counterclaim; and denying Harmony Haus attorney's fees. VACATED in part; AFFIRMED in part; REVERSED in part; and REMANDED.

I.

The City of Austin granted Harmony Haus a reasonable accommodation under the FHA, 42 U.S.C. § 3604(f), issuing a license to operate a rooming house at 2105 Real Catorce Drive (the Catorce house) in the Parkstone subdivision as a sober-living home for up to 12 individuals recovering from alcoholism and drug-addiction. (The City of Austin requires a license to operate a "rooming house", defined as: "A structure, other than a hotel, where lodging for more than six unrelated persons is provided without meals in return for compensation." Austin City Code § 25-12-213, 202.1 and 1303(A). Rooming houses for individuals recovering from drug-addiction or alcoholism are often referred to as "group homes", "sober-living facilities", or "halfway houses". We refer to the Catorce house as a "sober-living home".)

The Catorce house, which has six bedrooms, is subject to the deed restrictions contained in Parkstone's declaration of covenants (the declaration), including for: single-family residential use ("[a]ll Lots shall be . . . used solely for single family residential use"); noise and nuisance ("[n]o noise or other nuisance shall be permitted to exist or operate upon any portion of the Property so as to be offensive or detrimental to any other

portion of the Property or its occupants"); and vehicles ("vehicles . . . shall not be parked or left on any portion of the Property other than . . . [the] garage or driveway for longer than twelve . . . hours at a time").

Lessee Harmony Haus requested Parkstone exempt the Catorce house from "any applicable HOA covenant, rule, or regulation relating to any restriction that would otherwise impede its operation so that its residents can be provided an equal opportunity to use and enjoy their housing". In that regard, Harmony Haus requested Parkstone waive the singe-family-residential-use and parking restrictions to allow 12 unrelated residents (with their eight vehicles) to live at the Catorce house. Parkstone denied this request, but offered to waive the single-family-residential-use restriction and permit Harmony Haus to operate with up to six residents.

As a result, Harmony Haus (together with an owner and lessor of the Catorce house, Ling Zhou) filed this action, claiming Parkstone's refusal to accommodate more than six residents violates the FHA. Harmony Haus sought, *inter alia*, injunctive relief and attorney's fees. In response, Parkstone, *inter alia*, sought a declaratory judgment that it had not violated the FHA; sought an injunction against Harmony Haus' using the Catorce house in violation of the declaration, except as permitted by the reasonable accommodation offered by Parkstone, *i.e.*, that no more than six adults be allowed to reside in the Catorce house; presented a breach-of-contract counterclaim that Harmony Haus "violated or will violate the deed restrictions" as to residential use, noise, and parking; and presented a counterclaim that Harmony Haus violated Chapter 202 of the Texas Property Code, seeking civil damages of up to $200 per day for failure to obtain exceptions to the single-family-residential-use restriction, potential noise violations, and parking outside of the garage or driveway longer than 12 hours at a time.

No. 20-50185

Following a two-day bench trial, the district court: enjoined Parkstone from enforcing the declaration against Harmony Haus with respect to the single-family-residential-use restriction; denied Harmony Haus' claim for attorney's fees and costs; denied Parkstone's application for an injunction; ruled that the declaration's restrictions regarding noise, nuisance, and parking remain in effect, and that Parkstone may enforce those restrictions, so long as such enforcement is applied in an evenhanded manner that treats handicapped and non-handicapped residents alike, *see* 42 U.S.C. § 3604(f)(2)–(3) (prohibiting discrimination in privileges of renting a dwelling against any renter because of a handicap of a person residing, or intending to reside, in that dwelling); and ruled that Parkstone's counterclaims for breach of contract and violation of the Texas Property Code were waived because they were not raised at trial.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (citations omitted). The primary issue is whether Parkstone violated the FHA by failing to make a reasonable accommodation when it denied Harmony Haus' request to allow 12 residents to live at the Catorce house.

This issue involves three questions: whether the residents are "handicapped" under the FHA; whether a 12-resident home is necessary to afford the residents an equal housing opportunity; and whether the requested accommodations were reasonable. Also at issue is whether the court erred in: ruling Parkstone waived its breach-of-contract counterclaim; and denying Harmony Haus attorney's fees.

4

No. 20-50185

A.

Regarding whether Parkstone violated the FHA by failing to provide a reasonable accommodation, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling". 42 U.S.C. § 3604(f)(1)(B). Discrimination includes "a refusal to make *reasonable* accommodations in rules [or] policies . . . when such accommodations may be *necessary* to afford such person equal opportunity to use and enjoy a dwelling". 42 U.S.C. § 3604(f)(3)(B) (emphasis added). The Catorce house is a dwelling under the FHA. *See* 42 U.S.C. § 3602(b) and (c) ("dwelling" is "any building . . . occupied as . . . a residence by one or more [individuals]"); *see also City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995).

The district court concluded, *inter alia*: Harmony Haus' residents are handicapped under the FHA; and its requested accommodation (permitting 12 unrelated residents) was reasonable and necessary. Accordingly, the court granted Harmony Haus injunctive relief under § 3613(c) of the FHA. We hold: the residents are handicapped; but the requested accommodation is not necessary (therefore we need not reach whether it was reasonable).

1.

The court did not err in concluding current and future Harmony Haus residents are handicapped under the FHA. Under the FHA, a handicap is "a physical or mental impairment which substantially limits one or more of [a] person's major life activities". 42 U.S.C. § 3602(h)(1). A physical or mental impairment includes "[a]ny physiological disorder or condition . . . affecting one or more of the [enumerated] body systems". 24 C.F.R. § 100.201(a)(1). Alcoholism and drug-addiction are "impairments", *see, e.g., Regional Economic Community Action Program, Inc. v. City of Middletown*, 294

F.3d 35, 46 (2d Cir. 2002); but, the FHA "does not include current, illegal use of or addiction to a controlled substance", 42 U.S.C. §3602(h). Therefore, a recovering alcoholic, or an individual recovering from drug-addiction, *i.e.*, not currently using illegal drugs, may be handicapped under the FHA if his alcoholism or addiction substantially limits one or more of his major life activities.

"Major life activities means functions such as *caring for one's self*, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and *working*."   24 C.F.R. § 100.201(b) (emphasis added).   Three Harmony Haus residents testified that their addictions rendered them unable to live alone and care for themselves:  K.S. "stopped eating", "wasn't taking care of [himself] hygienically", and "had been hospitalized more than once"; D.J. was hospitalized several times and had "several medical issues that were caused by alcohol"; and Harris, a resident and the house manager, "couldn't function" or take care of himself because of his addiction.   The court concluded the residents' "inability to live independently [without suffering a relapse] constitutes a substantial limitation on . . . the major life activity of caring for one's self".   Additionally, each of the three residents testified that their alcoholism or addiction substantially limited their ability to work:  K.S. "couldn't even focus enough to get to work let alone be very productive when [he] was there"; D.J.'s "work suffered a lot" and he quit his job because his alcohol-use affected his focus and concentration; and Harris lost his job because he "couldn't show up to work".

Parkstone maintains neither the current nor future residents are handicapped.  The former are addressed first.

a.

According to Parkstone, Harmony Haus' current residents are not handicapped because their major life activities are only substantially limited

when they are abusing alcohol or drugs or in a treatment center, and not while living at the Catorce house.  The residents testified that, although they are recovering, their alcoholism or drug-addiction renders them unable to be alone for extended periods of time without relapsing.  Residents at Harmony Haus "typically come directly from an inpatient treatment center".  (Some residents come to Harmony Haus from other sober-living homes they transitioned to after completing an inpatient treatment program.)  Evidence at trial was that transitioning from a treatment center to a sober-living home helps those with alcoholism and drug-addiction recover, rather than relapse. *See Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 901, 916 (M.D. La. 2017) ("[E]mpircal evidence establishes the effectiveness of the Oxford House model at preventing an individual's relapse into alcohol and drug use".) (citing Leonard A. Jason et al., *The Need for Substance Abuse After-Care: Longitudinal Analysis of Oxford House*, 32 Addictive Behavs. 803 (2007));  *see also Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 693–94 (M.D. La. 2013).

As the court concluded, the risk of relapse "constitutes a substantial limitation on [the residents'] ability to care for themselves".  Their ability to care for themselves while living at the Catorce house does not eliminate their "handicapped" status and protection under the FHA.  *Cf. Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331 (4th Cir. 2014) ("If the fact that a person could work with the help of a wheelchair meant he was not disabled under the [Americans with Disabilities] Act, the ADA would be eviscerated.").

b.

Parkstone also asserts Harmony Haus must prove each of its future residents are handicapped.  Because future residents are unknown, we look to the current residents as a representative sample and to Harmony Haus'

criteria for residents at the Catorce house. *See Browning*, 266 F. Supp. 3d at 911 ("Because of the nature of the necessary criteria that an applicant must meet in order to reside at [the sober-living home], all of the residents are recovering from alcoholism or drug addiction, and the experiences of [two residents] during the times of their addictions therefore are representative of the residents' experiences generally."); *see also Kearins v. Vill. Creek of Eldorado Home Owners' Ass'n, Inc.*, No. 4:17-cv-00769, 2019 WL 2266635, at *4 (E.D. Tex. 5 Mar. 2019) (noting that, because issue was "handicapped status of the residents a facility aims to serve", "criteria for admission to the facility at issue is an important factor"); *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 47 (holding residents of halfway house were handicapped after considering admissions criteria).

The residents who testified are representative of the current and future residents, as they were selected to live at the Catorce house based on Harmony Haus' criteria. The court concluded that the "admissions criteria . . . is sufficient evidence of handicapped status in this type of group home". The typical Harmony Haus resident, the court found, "come[s] directly from an in-patient treatment center", and "the treatment center from which the resident comes is the most important factor in selecting residents". Because future residents must be admitted to, and complete, an in-patient treatment program, they will be considered handicapped under the FHA. *See City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994), *aff'd*, 514 U.S. 725 (1995) ("Participation in a supervised drug rehabilitation program, coupled with non-use, meets the definition of handicapped [under the FHA].").

2.

As noted, the Catorce house has six bedrooms. Harmony Haus has failed to show, as required by 42 U.S.C. § 3604(f)(3)(B), that allowing 12

residents to live at the Catorce house is necessary to provide its residents an equal opportunity to use and enjoy the home. *See Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996) ("[P]laintiff bears the burden of proving a violation of [the FHA]".). "Reasonable accommodation claims under the FHA . . . require that a reasonable accommodation be provided to the plaintiffs if *necessary* to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled." *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018) (emphasis added); *see also Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) ("[A]n FHA reasonable-accommodation . . . plaintiff must show that, but for the requested accommodation or modification, he likely will be denied an equal opportunity to enjoy the housing of his choice".) (internal quotation marks and citation omitted).

Necessary means "indispensable, requisite, essential, needful; that cannot be done without". *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) (quoting 10 Oxford English Dictionary 275–76 (2d ed. 1989)). When assessing an FHA reasonable-accommodation request, necessity must be considered in the light of "proposed alternatives". *Id.* Merely being preferable to an alternative is not sufficient; it must be essential. *See id*; *see also Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 605 (4th Cir. 1997) (holding 15-, rather than eight-, resident group home not necessary to accommodate handicapped individuals). For "groups of handicapped persons who seek to live together . . . for mutual support", such as in a sober-living home, "some minimum size may be essential to the success of the venture". *Brandt v. Vill. of Chebanse*, 82 F.3d 172, 174 (7th Cir. 1996). To prove a certain minimum size is essential, plaintiff may show that number of residents is necessary for a sober-living home to be "therapeutically meaningful" or "financially viable". *Bryant Woods*, 124 F.3d at 605.

Parkstone's proposed alternative was allowing six residents to live at the Catorce house. Harmony Haus asserts 12 are necessary for a sober-living home to work (at trial, its expert opined "less than 12 to 14 to 16" is unethical); but Parkstone presented evidence of effective sober-living homes with six to eight residents, including some operating in Austin. *See, e.g.*, *Browning*, 266 F. Supp. 3d at 916 (finding "at least six otherwise unrelated individuals", not 12 to 14 to 16, "who are recovering from alcoholism or drug addiction must reside together in a dwelling in order to achieve [the] ameliorative effects" of recovering from alcoholism or addiction).

a.

First addressed is whether Harmony Haus has shown therapeutic necessity. Harmony Haus claims 12 residents are necessary for its model of sober-living to be effective. A "critical mass" of 12 residents is necessary, Harmony Haus contends, "to ensure that its phasing system functions, whereby more established residents mentor newer ones and where each resident has a roommate to help ensure accountability and avoid feelings of isolation". The district court found this "phasing system is necessary to Harmony Haus's model of recovery". But the FHA requires accommodations that "may be necessary to afford [handicapped individuals] equal opportunity to use and enjoy a dwelling". 42 U.S.C. § 3604(f)(3)(B). Showing that an accommodation is necessary for a sober-living home operator's chosen model is not sufficient. Rather, an FHA reasonable-accommodation plaintiff "must show that, but for the accommodation, [handicapped individuals] likely will be denied an equal opportunity to enjoy the housing of their choice". *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996). Harmony Haus has not shown that a phasing system using 12 residents is necessary to accommodate its handicapped residents.

No. 20-50185

The court also found that having a "greater number of residents" is "important in that it helps ensure that any particular resident is not home alone, thereby risking isolation and relapse". But Harmony Haus has not met is burden to show that it needs 12 residents to prevent isolation. One resident testified that having a roommate—*i.e.*, having two occupants per bedroom—would be helpful to him in avoiding isolation. Twelve residents are necessary, Harmony Haus contends, because with any less, each of the six bedrooms will not have two occupants. But Harmony Haus did not present evidence showing it is necessary to use all six bedrooms, rather than using three with two residents in each. *See Bryant Woods*, 124 F.3d at 605 ("If [plaintiff]'s position were taken to its limit, it would be entitled to construct a 10–story building housing 75 residents, on the rationale that the residents had handicaps."). At time of trial, Harmony Haus was operating with six residents. Two of them testified that living at the Catorce house was helping them recover and stay sober.

b.

Next addressed is whether Harmony Haus has shown financial necessity. Parkstone counters that Harmony Haus waived this issue by not cross-appealing the district court's ruling that it failed to show 12 residents are necessary for financial viability. "[E]ven without filing a cross-appeal, an appellee can still present an issue on appeal that does not seek to modify the judgment; in other words, he must cross-appeal only when he seeks to alter it". *Castellano v. Fragozo*, 352 F.3d 939, 965 (5th Cir. 2003) (en banc) (Barksdale, J., concurring in part and dissenting in part) (citing *Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996)). Harmony Haus does not seek to alter the judgment; instead, it seeks to affirm the judgment that its requested accommodation was necessary. The issue of financial necessity, therefore, is not waived for failure to cross-appeal.

The district court noted that an FHA reasonable-accommodation plaintiff may also prove necessity based upon financial viability. *See Elderhaven*, 98 F.3d at 179 ("We recognize that the economics of group living arrangements often require a critical mass of residents in order to make feasible the type of alternative living arrangements that the Fair Housing Act was designed to encourage."). The court found: the Catorce house "would have to close if it were limited to six residents"; but because "this does not, without more, show that Harmony Haus requires *twelve* residents to remain financially viable", the court concluded "Harmony Haus has not shown that twelve residents are necessary for its financial viability". (Emphasis in original.)

Only in a single paragraph, Harmony Haus reasserts the court's finding that six residents would not be financially viable. But, it does not challenge the court's conclusion that 12 residents are *not* necessary.

Arguably, this issue is waived because of inadequate briefing. *See N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 185 (5th Cir. 2003). Assuming, *arguendo*, the issue is not waived, we uphold the district court's conclusion, because a finding that Harmony Haus is not financially viable with six residents is not sufficient to show that 12 residents are necessary for it to be financially viable.

In sum, Harmony Haus has not shown having 12 residents at the Catorce house is a necessary accommodation under the FHA. (Because allowing 12 residents is not necessary, we need not reach the request for eight vehicles.)

3.

As noted, because Harmony Haus has not shown that an accommodation allowing 12 residents is necessary, we need not reach whether the requested accommodations were reasonable. Instead, the

reasonable accommodation Parkstone offered—allowing six residents to live at the Catorce house—should be enforced.

## B.

Next at issue is whether Parkstone waived its breach-of-contract counterclaim. To preserve a claim, a party must raise it "to such a degree that the district court has an opportunity to rule on it". *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 140 (5th Cir. 2016) (citation omitted).

Parkstone presented some evidence at trial regarding Harmony Haus' breaching the declaration's parking and noise-and-nuisance restrictions and reasserted the breach-of-contract claim in its post-trial brief, requesting injunctive relief. That claim, therefore, is not waived. *See Stanford v. Comm'r.*, 152 F.3d 450, 462 n.18 (5th Cir. 1998) (holding issue not waived because plaintiffs "rais[ed] it in their pleadings and introduc[ed] relevant evidence at trial").

Accordingly, our remand to the district court includes for it to rule on Parkstone's request for attorney's fees under Texas Property Code § 5.006 for violations of the declaration. *See* Tex. Prop. Code § 5.006(a) ("In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.").

## C.

Finally, because we hold Harmony Haus has not demonstrated its requested accommodation was necessary under the FHA, Harmony Haus is not a prevailing party and, therefore, not entitled to attorney's fees. *See* 42 U.S.C. § 3613(c)(2). Therefore, Harmony Haus' cross-appeal on the issue of attorney's fees fails.

No. 20-50185

## III.

For the foregoing reasons, the injunction by the district court is VACATED; those parts of the judgment denying Harmony Haus attorney's fees and court costs are AFFIRMED; the district court's ruling that Parkstone's breach-of-contract counterclaim is waived is REVERSED; and this case is REMANDED for further proceedings consistent with this opinion, including the district court's enjoining Harmony Haus from violating the declaration.