# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2023

Lyle W. Cayce
Clerk

No. 22-40637

Women's Elevated Sober Living L.L.C.; Constance Swanston,

*Plaintiffs—Appellees/Cross-Appellants*,

Shannon Jones,

*Plaintiff—Appellee*,

*versus*

City of Plano, Texas,

*Defendant—Appellant/Cross-Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-412

_____

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Defendant-Appellant, the City of Plano (the "City") appeals the district court's judgment holding that it violated the Fair Housing Act ("FHA") due to its failure to accommodate Plaintiffs as to the capacity limits in the applicable zoning ordinance. Because we hold that the district court

No. 22-40637

erred in determining that the evidence satisfied the applicable legal standard, we VACATE the district court's injunction and REMAND for further proceedings consistent with this opinion.[1]

## I.

Plaintiffs are Constance Swanston ("Swanston"), Shannon Jones ("Jones"), and Women's Elevated Sober Living, LLC ("WESL") (collectively, "Plaintiffs"). Swanston is an individual in recovery from substance use disorders ("SUDs") and the owner and operator of WESL. In November 2018, WESL opened a sober living home (the "Home") on Stoney Point Drive in Plano, Texas. Jones is a caretaker and resident of the Home.

WESL offers numerous services to the Home's residents, including weekly Alcoholics and Narcotics Anonymous meetings, daily drug and alcohol testing, employment training, and access to drug- and alcohol-education groups. The Home is 5980 square feet and has seven bedrooms, one for Jones and six for WESL residents. WESL requires each resident to have at least one roommate. At one point, the Home had fifteen residents.

In early 2019, the City opened an investigation into the Home after receiving complaints from neighborhood residents. The City's zoning ordinance allows only two types of residences in SF-7 (single family) zones,

_____

[1] Because the district court's injunction is vacated based on its determination of an FHA violation, the district court's judgment ordering damages and attorneys' fees to Plaintiffs is also vacated. For this reason, we do not address the parties' arguments on appeal regarding damages and attorneys' fees.

No. 22-40637

either a "Household" or a "Household Care Facility." The zoning ordinance limits the occupancy of a Household Care Facility to eight unrelated disabled individuals and two caretakers. After the City completed its investigation, it informed WESL that the Home violated the SF-7 zoning ordinance because the occupancy exceeded eight unrelated disabled individuals.

On April 16, 2019, WESL filed a request for accommodation with the City's Board of Adjustment (the "Board") to allow seventeen to twenty residents in the Home. WESL's request included Swanston's declaration that living in "a sober home with 12 residents creates the necessary family and community atmosphere for the personal accountability and support that makes sober living effective." The Board took up WESL's accommodation request at a public meeting on May 28, 2019. At the meeting, a city official testified that the Home could safely house up to thirty-four people. The Board also heard public comments that predominantly urged the Board to deny the requested accommodation. It then heard from Swanston's attorney before briefly deliberating on the request. After deliberation, the Board voted eight-to-zero against WESL's request for accommodation.

On June 5, 2019, Swanston and WESL filed suit in federal court claiming disparate treatment, disparate impact, and failure-to-accommodate based on theories of financial and therapeutic necessity. One week later, Swanston and WESL filed an Amended Complaint adding Jones as a plaintiff. On February 8–9, 2021, the district court held a bench trial. Plaintiffs' expert, Dr. John Majer, testified that in terms of occupancy levels of a sober-living

home, having more residents would "increase the richness of the social support available that is going to help individuals connect to recovery." He further averred that "when you increase the [capacity], you're going to increase the therapeutic benefit."

The district court issued its memorandum opinion on the issue of liability on August 27, 2021. The district court determined that Plaintiffs failed to prove their claims of disparate treatment, disparate impact, and failure-to-accommodate under a theory of financial necessity. On Plaintiffs' failure-to-accommodate claim under a theory of therapeutic necessity, the district court determined that the issue "require[d] individualized considerations" and "must be meticulously considered on a case-by-case basis and in light of the evidence presented." The district court then held that the City violated the FHA for its failure to accommodate after concluding that Plaintiffs' proposed accommodation was therapeutically necessary as compared to the offered alternative, considering the disabilities of the Home's residents.

The district court then enjoined the City from (1) restricting the Home's occupancy to fewer than fifteen residents; (2) enforcing any other property restriction violative of the FHA or ADA; and (3) retaliating against Plaintiffs for pursuing housing discrimination complaints under the FHA and ADA. The district court also ordered supplemental briefing on the issue of damages and, following a hearing, awarded Plaintiffs nominal damages of one dollar. The district court rejected Swanston's and WESL's demands for punitive, mental anguish, and lost profits damages because it reasoned that

Plaintiffs presented "no factual evidence" to support those demands. In a separate memorandum opinion on attorneys' fees, the district court awarded Jones, Swanston, and WESL the full lodestar without any reduction or increase. This appeal followed. WESL and Swanston cross-appealed on the issue of the district court's denial of their demand for lost profits damages.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (per curiam) (citations omitted). The district court's findings of fact will stand unless we are "left with the definite and firm conviction that a mistake has been committed." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006) (citation omitted). Where "the district court appl[ies] the wrong legal standard in making its factual findings, this court then reviews the district court's factual findings de novo." *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).

## III.

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that

dwelling." 42 U.S.C. § 3604(f)(1)(B).[2] Discrimination includes "a refusal to make reasonable accommodations in rules [or] policies . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). In a failure-to-accommodate claim, a plaintiff must demonstrate that (1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home. *See Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018). Importantly, the plaintiff bears the burden of proving a violation of the FHA. *See Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996).

To prove that an accommodation request is necessary, courts require that a plaintiff prove that the requested accommodation makes the home either "financially viable" or "therapeutically meaningful." *See Bryant Woods Inn v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997). Some courts have determined that necessity must be considered (1) in light of the statutory provision's language; (2) in accord with the purpose of the FHA and ADA, to ameliorate the plaintiff's particular disability; and (3) in the light of "proposed alternatives." *See Vorchheimer v. Philadelphian Owners Ass'n*,

---

[2] Both parties agree that the accommodations requirements under both the FHA and the ADA are functionally identical. As such, "this opinion will address the claims relating to these statutes collectively." *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 n.2 (5th Cir. 2018).

903 F.3d 100, 105 (3d Cir. 2018). However, a requested accommodation that is preferable to an alternative is not sufficient; it must be essential. *See Cinnamon Hills Youth Crisis Ctr. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012). While we have spoken to the issue of therapeutic necessity before, we have no precedential opinions addressing this inquiry.

We must evaluate necessity considering its definition, that is, something "[i]ndispensable, requisite, essential, needful; that cannot be done without, or absolutely required." *Vorchheimer*, 903 F.3d at 105 (alteration in original) (internal quotation marks omitted) (quoting 10 Oxford English Dictionary 275–76 (2d ed. 1989)). A requested accommodation from capacity restrictions must directly ameliorate the effect of the plaintiffs' disabilities, such that the requested number *must* reside together in a dwelling to achieve effective amelioration of their afflictions.[3] *See id.*; 42 U.S.C. § 3604(f)(3)(B). Put another way, without the requested accommodation, the ameliorative benefit provided must be so insignificant that it deprives persons with disabilities from the opportunity to use and enjoy the dwelling of their choice as compared to those without disabilities. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008);

_____

[3] As an illustration, see *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 916 (M.D. La. 2017) (holding that "at least six otherwise unrelated individuals who are recovering from alcoholism or drug addiction must reside together in a dwelling in order to achieve the[] [desired] ameliorative effects").

*Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996). This closely tracks with the standards devised by our sister circuits.

For example, the Fourth Circuit held in *Bryant Woods Inn, Inc. v. Howard County* that the necessity element "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." 124 F.3d at 605. Considering prior jurisprudence, we hold that the district court improperly applied a standard accepting that proof of greater therapeutic benefit from residents' disabilities was sufficient to establish that the requested accommodation was indispensable to their recovery from SUDs, rather than requiring the plaintiffs to prove that the accommodation was indispensable or essential.

As stated above, this circuit has no published precedent on point. However, a previous panel of this court issued an unpublished opinion in *Harmony Haus Westlake, L.L.C. v. Parkstone Property Owners Ass'n*, 851 F. App'x 461 (5th Cir. 2021) (per curiam). The *Harmony Haus* panel stated that where the request for accommodation addresses a restriction limiting a home's capacity, a plaintiff must show that a certain number of residents is necessary for the home to be "therapeutically meaningful." *See id.* at 465. The panel then determined that the sober home failed to meet its burden to prove that an accommodation allowing twelve residents was necessary to ameliorate the residents' disabilities via the specific programs the sober home ran. *Id.* We stated that "[s]howing that an accommodation is necessary for a sober-living home operator's chosen model is not sufficient." *Id.* at 466. The

panel concluded that the sober home's expert and resident testimony demonstrated at most that an accommodation to allow twelve residents provided better recovery prospects for the residents but was insufficient to prove necessity. *Id.* at 465–66.

This case is strikingly analogous to *Harmony Haus*. We hold that the district court erred by applying a standard accepting that therapeutically beneficial treatment constitutes necessity under the FHA and ADA. The testimony elicited at the bench trial—like the evidence in *Harmony Haus*—was insufficient to demonstrate that the requested capacity accommodation was indispensable or essential to the continued facilitation of the residents' recovery from SUDs. *See id.* A requested accommodation is necessary only if the plaintiff shows that without the requested accommodation, they will receive no ameliorative effect from their disability, thereby depriving them of the equal opportunity to enjoy the dwelling.[4] To accept evidence that an accommodation would be better or provide a greater benefit to its residents with disabilities constitutes legal error. *Cf. Vorchheimer*, 903 F.3d at 112.

Thus, the legal error flows from the district court's determination that Plaintiffs satisfied their burden of proof. At trial, Dr. Majer testified that having fifteen residents in a sober home provides an increased therapeutic benefit over eight residents and "improv[ed] the odds of [residents] staying sober." Throughout his testimony, however, he does not explicitly state whether a specific number of residents is required for the Home to provide

---

[4] *See, e.g.*, *Vorchheimer*, 903 F.3d at 110; *Cinnamon Hills*, 685 F.3d at 923–24.

No. 22-40637

the requisite therapeutic milieu for recovery.[5] For instance, he stated that a minimum number of fifteen residents was required to have "an effective therapeutic result." But he also stated that "adding more residents increases therapeutic benefit in recovery homes" and makes it "more likely [] to produce more therapeutic effect." He also opined that having fifteen residents in a sober home improved the odds of its residents staying sober. Thus, the district court erred by concluding that Plaintiffs satisfied their failure-to-accommodate claim here based on the evidence showing an ameliorative benefit derived from a larger occupancy.

Looking to our sister circuits, we find confirmation that our holding here is appropriate. In *Vorchheimer*, the Third Circuit determined that a resident failed to allege a cognizable failure-to-accommodate claim because the requested accommodation was merely more preferential than the proposed alternatives. *See* 903 F.3d at 108–09. There, the resident had an

_____

[5] We measure necessity in light of its definition as "something that 'cannot be done without.'" *See Cinnamon Hills*, 685 F.3d at 923 (rejecting the argument that "an accommodation should be held 'necessary' anytime it would provide [] direct amelioration of a disability's effect"); *Vorchheimer*, 908 F.3d at 105 ("[T]he [FHA]'s necessity element requires that an accommodation be essential, not just preferable."); *Bryant Woods Inn*, 124 F.3d at 605 ("Thus, nothing in the record that we can find suggests that a group home of 15 residents, as opposed to one of 8, is necessary to accommodate individuals with handicaps."); *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 490 (6th Cir. 2019) (holding that the plaintiff's proposed "total smoking ban likely was not necessary (that is, 'indispensable,' 'essential,' something that 'cannot be done without') to give her the same opportunity to use and enjoy her condo as compared to a non-disabled person who dislikes the smell of smoke"); *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1191 (9th Cir. 2021) ("In other words, absent an accommodation, the plaintiff's disability must cause the plaintiffs to lose an equal opportunity to use and enjoy a dwelling.").

ambulatory disability which required the use of a walker to get from her condo to her building's lobby. *Id.* at 103–04. The condominium owners' association rejected her request to leave the walker in the lobby but offered several methods to store it for her, all of which she refused. *Id.* at 104. In affirming the district court's dismissal of her claim, the *Vorchheimer* court noted that the necessity inquiry "adopts a strict sense of 'necessary'" and may "function[] as a but-for causation requirement, tying the needed accommodation to equal housing opportunity." *Id.* at 110. The Third Circuit concluded that, based on its strict reading of § 3604(f)(3)(B) and the prior jurisprudence in its court and its sister circuits, the resident failed to prove that her requested accommodation was necessary considering the definition of the term, the purpose of the FHA, and the proffered alternatives. *Id.* at 112–13. For the same reasons, we hold that Plaintiffs have failed to establish that their requested accommodation was therapeutically necessary. *See id.*

## IV.

For the foregoing reasons, the district court's injunction is VACATED and this case is REMANDED for further proceedings consistent with this opinion.